KINDRED HOMES, INC., Appellant,

v.

Hon. Sherman DEAN, Jr., Jessamine County Judge Executive, Hon. Mildred Bunch, Hon. Martin Lowry, Hon. David C. Johns, Hon. James A. Davis, Hon. J. A. Wells, Hon. Ben Wilson, as Members of the Jessamine County Fiscal Court, P. J. Baugh Industries, Inc., P. J. Baugh, Individually, Barbara Hunter, and Alice H. Chandler, Appellees.

Hon. Sherman DEAN, Jr., Jessamine County Judge Executive, Hon. Martin Lowry, Hon. David C. Johns, Hon. James A. Davis, Hon. J. A. Wells, Hon. Ben Wilson, as Members of the Jessamine County Fiscal Court, Appellants,

v.

KINDRED HOMES, INC., Appellee.

Alice H. CHANDLER, Barbara Hunter, P. J. Baugh, Individually, and P. J. Baugh Industries, Inc., Appellants,

v.

KINDRED HOMES, INC., Hon. Sherman Dean, Jr., Jessamine County Judge Executive, Hon. Martin Lowry, Hon. David C. Johns, Hon. James A. Davis, Hon. J. A. Wells, Hon. Ben Wilson, as Members of the Jessamine County Fiscal Court, Appellees.

Court of Appeals of Kentucky.

Aug. 3, 1979.

Rehearing Denied Nov. 2, 1979.

Ben K. Wilmot, Wilmot & May, Stanford, for Kindred Homes, Inc.

Howard Downing, Nicholasville, for Hon. Sherman Dean, Jr., Jessamine County Judge Executive, Hon. Mildred Bunch, Hon. Martin Lowry, Hon. David C. Johns, Hon. James A. Davis, Hon. J. A. Wells, Hon. Ben Wilson, as members of the Jessamine County Fiscal Court.

Michael L. Ades, Stoll, Keenon & Park, Lexington, William Miles Arvin, Nicholasville, for P. J. Baugh Industries, Inc.; P. J. Baugh, individually; Barbara Hunter; and Alice H. Chandler.

Before WHITE, HOWARD and VANCE, JJ.

WHITE, Judge.

Kindred Homes, Inc. appeals that portion of a Jessamine Circuit Court judgment upholding the validity of the Jessamine County–City of Wilmore zoning regulations. The remaining parties appeal that portion of the judgment declaring the 1977 amendments to the comprehensive plan invalid and granting Kindred Homes a requested zone change.

In 1969, the Jessamine Fiscal Court and governing body of the City of Wilmore, Kentucky, created the Jessamine County–City of Wilmore Joint Planning Commission.

On December 10, 1970, upon recommendation of the Joint Planning Commission, the Jessamine Fiscal Court adopted goals and objectives, interim zoning regulations, and a zoning map. All areas of the county outside the city limits of Nicholasville and Wilmore were zoned agricultural.

On May 6, 1971, the Jessamine Fiscal Court adopted a comprehensive plan and interim subdivision regulations. The 1971 plan recognized that residential growth would occur outside the county's urban service areas. Particular mention was made to anticipated development in the northern portion of Jessamine County in the vicinity of the Lexington urban area.

In July 1975, the Jessamine Fiscal Court rejected proposed new zoning ordinances offered by the Planning Commission to replace the interim zoning ordinance. No permanent zoning regulations have been adopted since approval of the comprehensive plan in 1971. The only amendments to the zone map have been to specific tracts of land following applications for such amendment.

In 1973, Kindred Homes purchased a 95–acre tract of land in Jessamine County, located on the east side of Harrodsburg Road and on the south side of Brannon Road. At the same time, Kindred Homes also took an option to purchase an additional 252–acre tract directly north across Brannon Road from the 95–acre tract.

Kindred Homes, in March 1974, applied for a zone map amendment of the 95–acre tract from A–1 to R–1. The Joint Planning Commission recommended denial of the application but the Jessamine Fiscal Court granted the zone change. The Jessamine Circuit Court affirmed the action of the Fiscal Court. The judgment was appealed to the Kentucky Supreme Court, which affirmed by opinion entered May 28, 1976.

In 1976, Kindred Homes exercised its option to purchase the 252–acre tract and then sought to have that tract rezoned from A–1 to R–1. The application was denied and no appeal taken.

In January 1977, the Joint Planning Commission held a hearing to consider proposed deletions from the 1971 comprehensive plan. The deletions were approved by the Joint Planning Commission but were never submitted to nor approved by the Jessamine Fiscal Court.

In July 1977, Kindred Homes again filed an application for a zone amendment on the 252–acre tract. The Planning Commission, after hearings on the proposed zone change, recommended denial of the application in January 1978. In March 1978, the Jessamine Fiscal Court adopted the findings of fact and recommendations of the Joint

Planning Commission and denied the application.

An appeal to the Jessamine Circuit Court was taken and the Circuit Court reversed the Fiscal Court and ordered the application to be granted. Hence this appeal.

The first question presented to this court is whether the Jessamine County–City of Wilmore interim zoning regulations adopted in 1970 are valid. Counsel for Kindred Homes advanced a number of arguments as to why these regulations should be declared invalid. The Jessamine Circuit Court, in its memorandum opinion, noted a number of irregularities concerning the regulations but concluded that they were valid and enforceable. We disagree.

Interim zoning regulations were adopted concurrently with the goals and objectives on December 10, 1970. On May 6, 1971, the comprehensive plan and interim subdivision regulations were adopted. No permanent zoning regulations have ever been adopted.

KRS 100.367 provides that within five years from June 16, 1966 "all organizations, plans, and regulations will be in conformance with the provisions of this chapter."

KRS 100.334(2) anticipated the need for interim regulations before formulation of a comprehensive plan. However, in *Daviess County v. Snyder*, Ky., 556 S.W.2d 688 (1977), the Supreme Court recognized that goals and objectives must first be approved, even before interim regulations. It is the goals and objectives which provide the basis for interim zoning. It appears naturally to follow that the comprehensive plan provides the basis for permanent zoning.

■ Although KRS 100.201 mentions interim and permanent zoning, we think the inclusion of interim in lieu of permanent regulations was not to sanction interim zoning but merely to show what any zoning regulation purports or is authorized to accomplish. We find this view strengthened by the court's language in *Manley v. City of Maysville*, Ky., 528 S.W.2d 726, 728 (1975): "[T]he purpose of KRS 100.213 is to require zoning to conform to the basic scheme of prior planning and to prohibit indiscriminate, piecemeal attempts to rezone."

In the case of *City of Erlanger v. Hoff*, Ky., 535 S.W.2d 86 (1976), the City of Erlanger had adopted a comprehensive plan but no zoning ordinances. In an attempt to comply with the time limits of KRS 100.367, Erlanger adopted existing zoning ordinances as interim regulations, as provided in KRS 100.334. The court held that the existing ordinances were not compatible with the comprehensive plan and therefore invalid. At page 88 the court stated:

Chapter 100 was completely revised in 1966 in an attempt to provide workable procedures for handling the very complicated problems inherent in zoning. It is clear that the legislature considered careful planning as a prerequisite of good zoning. It was stated in *Fritts v. City of Ashland*, Ky., 348 S.W.2d 712 (1961), "It is to be hoped that in the future zoning authorities will give recognition to the fact that an essential feature of zoning is *planning*." The court lamented in *City of Louisville v. McDonald*, Ky., 470 S.W.2d 173 (1971), "That statement made in 1961 has had little discernible effect." Erlanger's failure to implement the comprehensive plan with a compatible zoning ordinance within the five–year period left the city without zoning regulations.

■ Like the court in *Erlanger*, we find no zoning regulations compatible to the comprehensive plan. The only zoning regulations are interim and were adopted prior to the comprehensive plan. They were to implement the goals and objectives until a comprehensive plan and attendant permanent regulations were formulated.

The present situation in Jessamine County amounts to a comprehensive plan without zoning regulations. Hence, the plan has little effect. The comprehensive plan relegates the entire county outside the two major towns as an agricultural zone. Thus, any modifications to the plan have been piecemeal and contrary to the very theory of zoning.

Appellees and cross–appellants raise the question of whether the circuit court erred in finding the 1977 amendments to the comprehensive plan invalid.

**18**

The Circuit Court concluded that the Joint Planning Commission's amendments to the comprehensive plan without approval by the Jessamine Fiscal Court were void and without effect. We agree.

KRS 100.197 requires that "[t]he procedure for amendment [to the comprehensive plan] shall be the same as for the original adoption."

KRS 100.334(1) states:

The Commission shall have the authority to adopt all rules and regulations necessary to carry out its functions under the provisions of this chapter. Every rule and regulation promulgated by the Commission shall be submitted to each Fiscal Court and legislative body concerned for approval or rejection.

KRS 100.111(17) defines the word "regulation" as "any enactment by the legislative body of a city or county whether it is an ordinance, resolution, or an order and shall include regulations for the subdivision of land adopted by the planning commission."

 The above statutes, when read together, lead us to the conclusion that any amendments to the comprehensive plan require approval by the Fiscal Court. Since the Fiscal Court did not approve the 1977 amendments, they are without effect.

 This court finds that Jessamine County–City of Wilmore has a comprehensive plan but no zoning regulations which effectuate it. Consequently, Kindred Homes is not bound by any actions or rulings of the Jessamine Fiscal Court based on the zoning ordinances in question.

Appellees and cross–appellants also raise the issue as to whether Kindred Homes is estopped from challenging the validity of the zoning ordinances. Kindred Homes has filed three applications for zone amendments. From the 1976 denial, no appeal was taken. From the 1975 denial, an appeal was taken to the Supreme Court of Kentucky. In neither of these proceedings was the validity of the zoning regulations attacked.

 In *Bowling Green–Warren County Airport Board v. Long*, Ky., 364 S.W.2d 167, 170 (1963), the court stated that "one who recognizes an ordinance and treats it as in force for a period of years may, under the circumstances, be precluded from challenging its validity." The court required that all elements of estoppel be present, however. All elements are not present in this case and we find no estoppel.

For the foregoing reasons, so much of the judgment as upholds the validity of the Jessamine County–City of Wilmore zoning regulations is reversed and remanded to the Jessamine Circuit Court with instructions to enter a judgment in conformity with this opinion. The remaining portions of the judgment are affirmed.

All concur.