THOMAS, Judge.
In August 2013, the Alabama Department of Human Resources (“DHR”), on behalf of B.C. (“the mother”), filed a contempt petition in the Lee Juvenile Court (“the juvenile court”) seeking to compel J.W.J., III (“the father”) to pay his child support and to calculate the father’s child-support arrearage. After several interim hearings and orders, the juvenile court held a. trial on March 3, 2016, relating to the father’s expected receipt of disability benefits from which he could pay sums toward his arrearage.
The evidence at the trial indicates that the father had suffered, an accident that had.left him disabled. The juvenile court remarked that the father appeared to have serious health issues on the date of the trial. The father testified that he had undergone two surgeries and that he had been awarded Supplemental Security Income (“SSI”) benefits from the Social Security Administration as a result of his inability to earn any income; the father is not employed. He explained that he has been awarded $700 per month in SSI benefits and that he had received a $2,000 lump-sum payment of retroactive SSI benefits in January-2016. He explained that he would receive two additional lump-sum payments of retroactive SSI benefits: another $2,000 payment in June 2016 and a $6,000 payment in January 2017.
The juvenile court entered a judgment on March 3, 2016, in which it determined that the father’s child-support arrearage was $12,252.50 and ordered that the father pay $750 from the SSI benefits that he had already received, $750 in June 2016 after receipt of the second lump-sum installment, and $2,523 from his third, and final, lump-sum installment in January 2017. The juvenile court also ordered that the father pay $100 per month toward the arrearage out of his $700 in monthly SSI benefits. The judgment specifically states that the father must make the payments ordered or face incarceration for contempt. The father filed a timely postjudgment motion, to which DHR responded by conceding that federal law prevented the juvenile court from ordering the father to pay his child-support arrearage out of his SSI benefits. The juvenile court denied the father’s postjudgment motion, and the father timely appealed.
We begin our analysis by noting that Rule 32(B)(2)(b), Ala. R. Jud. Admin., clearly exempts SSI benefits from the definition of “gross income.” The rule states that “benefits received from means-tested public-assistance programs, including, but not limited' to, ‘... Supplemental Security Income,” are not considered “gross in *357 come.” However, this fact does not assist us in determining whether the juvenile court erred in ordering the father to make payments toward his child-support arrear-age out of his SSI benefits.
As the father argues and DHR concedes, 42 U.S.C. § 407(a) provides that Social Security benefits are not transferable, assignable, or attachable. That section reads:
“The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.”
We note that Congress created an exception to the anti-attachment provision of § 407(a) by enacting 42 U.S.C. § 659(a), which permits withholding of certain federal benefits, “the entitlement to which is based upon remuneration for employment,” for payment of child-support or alimony obligations. However, SSI is not based on remuneration for employment and is instead a means-tested federal-benefit program. See Tennessee Dep’t of Human Servs. ex rel. Young v. Young, 802 S.W.2d 594, 597 (Tenn.1990) (explaining that SSI benefits are not based on remuneration for employment). Furthermore, 5 C.F.R. § 581.104(j) includes SSI benefits within those benefits that are not subject to garnishment. Thus, SSI benefits are not subject to attachment pursuant to § 659(a). See Sykes v. Bank of America, 723 F.3d 399, 405 (2d Cir.2013); Department of Pub. Aid ex rel. Lozada v. Rivera, 324 Ill.App.3d 476, 480, 755 N.E.2d 548, 551, 258 Ill.Dec. 165, 168 (2001).
We agree with the Illinois Court of Appeals, which explained the protection afforded SSI benefits by § 407(a) thusly:
“SSI is a national program to provide supplemental security income to ‘[e]very aged, blind, or disabled individual who is determined [under federal standards] to be eligible on the basis of his income and resources.’ 42 U.S.C.A. § 1381a (West Supp.2001). The purpose of SSI is to provide a subsistence allowance to (among others) anyone who is unable to engage in any substantial gainful activity by reason of a disability that can be expected to result in death or has lasted or can be expected to last for a continuous period of at least 12 months. See 42 U.S.C.A. § 1382c(a)(3)(A) (West Supp. 2001); Schweiker v. Wilson, 450 U.S. 221, 223-24, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186, 191 (1981).

«

“We agree with petitioner that section 407(a) preempts state child support laws and shelters any of her SSI payments from going to child support. A federal law preempts state regulation of domestic matters if ‘Congress has “positively required by direct enactment” that state law be preempted.’ Davis v. Office of Child Support Enforcement, 341 Ark. 349, 354, 20 S.W.3d 273, 275 (2000), quoting Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033-34, 95 L.Ed.2d 599, 607 (1987). We agree with the courts that have held that section 407(a) has such preemptive force in that it prohibits state courts from ordering child support to come from SSI benefits. See Davis, 341 Ark. at 355, 20 S.W.3d at 276; Becker County Human Services v. Peppel, 493 N.W.2d 573, 576 (Minn.App.1992); Tennessee Department of Human Services ex rel. Young v. Young, 802 S.W.2d 594, 597-99 (Tenn.1990). See also Commonwealth ex rel. Morris v. Morris, 984 S.W.2d 840, 842-47 (Ky. 1998) (Stephens, J., dissenting). To allow courts to order child support pay- *358 merits to come out of SSI benefits would seriously damage the clear and substantial interests that section 407(a) represents.
“Section 407(a) states that ‘none of the moneys paid or payable under [SSI] shall be subject to execution, levy, attachment, garnishment, or other legal process.’ 42 U.S.C.A. § 407(a) (West 1991). While section 407(a) undoubtedly bars a state court from garnishing SSI benefits or ordering future benefits to be withheld (see Morris, 984 S.W.2d at 841; Young, 802 S.W.2d at 599; Whitmore v. Kenney, 426 Pa.Super. 233, 241, 626 A.2d 1180, 1184 (1993)), it appears to prevent more than just the use of the federal government as a collection agency for child support obligations. We determine that section 407(a) forbids ordering child support that burdens any SSI benefits, even those that the beneficiary has already received.”
Rivera, 324 Ill.App.3d at 478-79, 755 N.E.2d at 550, 258 Ill.Dec. at 167.
The juvenile court’s judgment does not execute upon, levy, attach, or garnish the father’s SSI benefits. Instead, the juvenile court orders the father to pay the amounts specified upon his receipt of his SSI benefits under threat of contempt. Thus, we must consider whether an order compelling payment of a child-support ar-rearage under threat of contempt is an attempt to reach SSI benefits through “other legal- process” in violation of § 407(a).
The United States Supreme Court has explained that “other legal process”
“should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.”
Washington State Dep’t of Social & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). Orders requiring payment of a recipient’s SSI benefits under pain of contempt have been construed as “other legal process.” In re Lampart, 306 Mich.App. 226, 239-40, 856 N.W.2d 192, 199-200 (2014) (restitution order); Becker Cty. Human Servs. v. Peppel, 493 N.W.2d 573, 575 (Minn.Ct.App.1992) (child-support order). Although In re Lampart involved an order requiring an SSI recipient to pay restitution, we find the discussion regarding how a contempt order used to coerce an SSI recipient into paying his or her obligation violates § 407(a) instructive.
“We find that the reasoning of the trial court, if effectuated through its contempt powers so as to cause [the SSI recipient] to satisfy her restitution obligations from her [SSI] benefits, would be the use of a judicial mechanism to pass control over those benefits from one person to another. Thus, it would constitute ‘other legal process’ that is prohibited under 42 U.S.C. § 407(a). The process by which the trial court would enforce the restitution order would be the employment of its civil-contempt powers. Civil contempt is defined as ‘[t]he failure to obey a court order that was issued for another party’s benefit.’ Black’s Law Dictionary (9th ed.), p. 360. ‘A civil-contempt proceeding is coercive or remedial in nature.’ Id.
“When used in this manner, the court’s use of its civil-contempt powers to enforce a restitution order would act as a process much like the processes of execution, levy, attachment, and garnish *359 ment, because in that context, the process would involve a formal procedure by which the restitution victim, through the trial court, would gain control over [the recipient’s SSI] benefits. See Keffeler, 537 U.S. at 383-385, 123 S.Ct. 1017.... In this case, the court’s demand was the restitution order, and the court would compel compliance with that demand through its civil-contempt powers. Consequently, if the trial court were in fact to use its contempt powers in a manner as would compel [the recipient] to satisfy her restitution obligations using her [SSI] benefits, we would find that the process employed falls within the definition of ‘other legal process’ as the term is used in 42 U.S.C. § 407(a).
[[Image here]]
“We note that it could be argued that, in imposing a civil contempt, a court does not touch a contemnor’s money directly, but rather imposes a personal sanction on the contemnor that will be lifted if the contemnor chooses to comply. In other words, civil contempt imposes a choice; perhaps a choice in which neither alternative is appealing, but nonetheless a choice that the con-temnor is in fact free to make. However, we find this argument not to be compelling when the circumstances are such that a contempt finding necessarily requires a contemnor to satisfy the legal obligation that is the subject of the contempt order by invading a monetary source that the court is not allowed to reach directly. In those circumstances, the contempt order would be the functional equivalent of an order directly reaching the funds, such that labeling the order as one of ‘contempt’ rather than ‘garnishment’ would exalt form over substance and ignore the reality of the circumstances. See In re Bradley Estate, 494 Mich. 367, 387-388, 835 N.W.2d 545 (2013) (holding that the substance of an action labeled a civil-contempt indemnification action was a claim for tort liability despite its label).”
In re Lampart, 306 Mich.App. at 239-42, 856 N.W.2d at 199-201.
Thus, we conclude that the juvenile court’s order requiring the father to pay his child-support arrearage from his SSI benefits under threat of contempt violates § 407(a). As DHR argues, however, the juvenile court is not prevented from entering a judgment on the arrearage or from enforcing its order that the father make payments toward the arrearage provided that the father is ordered to satisfy his obligations from assets or sources of income other than the father’s SSI benefits. As the Michigan Court of Appeals explained, the juvenile court can hold future hearings to determine whether the father has other income or assets from which his child-support arrearage may be satisfied.
“Given that the trial court in this case has not yet held [the recipient] in contempt, has not made a determination with regard to whether she has any other assets (apart from any that are proceeds of her [SSI] benefits) from which restitution may be satisfied, and has not made any recent determination of her income sources to ascertain whether any exist apart from her [SSI] benefits, we decline to determine whether circumstances exist that might warrant a contempt order at this time. However, on remand, the trial court should follow our direction in this opinion, to appropriately (and perhaps periodically) ascertain [the recipient’s] assets and sources of income, perhaps through a contempt hearing, and to enter further orders as appropriate, while avoiding any directive, either explicit or otherwise, that will in fact cause [the recipient] to have to invade her [SSI] benefits (or the proceeds thereof) to sat *360 isfy her continuing restitution obligation.”
In re Lampart, 306 Mich.App. at 242, 856 N.W.2d at 201 (footnote omitted).
Accordingly, the juvenile court’s judgment, insofar as it compels the father to pay his child-support arrearage out of his SSI benefits, is reversed. The father does not seek review of the judgment insofar as it calculated his child-support arrearage, and therefore the propriety of that portion of the judgment is not an issue before this court. The juvenile court is permitted to determine on remand if the father has access to other income or assets from which he may satisfy his obligations, but it may not order the father to pay his child-support obligation or arrearage from his SSI benefits.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.